UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**BRANDIT PAYNE,**

   Plaintiff,

v.                                       No. 4:25-cv-00038-P

**UNITED PARCEL SERVICE, INC.,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion for Summary Judgment (ECF No. 107). Having considered the briefings and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Plaintiff Brandit Payne worked for United Parcel Service, Inc. ("UPS") in the transportation unit and, during the relevant times, served as a Division Manager at UPS's "Lone Star" hub in the Dallas-Fort Worth metroplex. During that period, Plaintiff reported to Cliff McClain, who oversaw the hub and feeder networks in the DFW metroplex area.

UPS maintains an Employee Relationships Policy governing both employment of relatives and "close personal relationships." This policy requires disclosure of relationships between employees that could create *potential* conflicts of interest.

Plaintiff previously received a written reprimand for failing to disclose this relationship after extensive communications with a subordinate. Then, in 2024, McClain discovered that Plaintiff had married a lower-level UPS employee who worked at the hub facility she oversaw. This was discovered after McClain noticed her last name had changed. This was reported to Human Resources, and an investigation

followed. The investigator found that she had violated company policy and determined that a demotion was appropriate discipline.

On the same day of her demotion, Plaintiff filed a complaint with the UPS Ethics Hotline, framing the issue as "personal retaliation" and stating that it was "a blatant state of discrimination." This complaint was referred to the UPS Employee Dispute Resolution program, a peer-reviewed panel that recommended upholding Plaintiff's demotion.

In 2024, Plaintiff filed a charge of discrimination with the EEOC. The EEOC later issued a notice of right to sue.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023).

The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

# ANALYSIS

As an initial matter, Plaintiff proffers various and sometimes overlapping claims under separate statutes. Because Title VII and TCHRA claims are governed under the same evidentiary framework, the Court analyzes them together. The Court separately addresses § 1981 claims only to the extent it differs (race-only scope). Lastly, Plaintiff attempts to plead as a separate cause of action for "intersectional discrimination"; however, it is not a cause of action, but rather, a theory of liability, and the Court will treat it as such.

## A. Evidentiary Objections

Plaintiff objects on various grounds to Defendant's attached exhibits. These errors were corrected by later filings. *See* ECF No. 118. Thus, the objections are **OVERRULED**.

## B. Discrimination (Title VII, Texas Labor Code, § 1981)

Plaintiff alleges gender, race, and intersectional discrimination under Title VII, Section 1981, and Texas Labor Code § 21.002(8). Claims brought pursuant to Title VII and § 1981 are "'governed by the same evidentiary framework,' such that the analyses under both statutes are substantively the same." *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 n.7 (5th Cir. 2004)). Similarly, the Texas Commission on Human Rights Act ("TCHRA") has language nearly identical to Title VII, and courts use the same evidentiary framework in resolving these types of claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 373 S.W.3d 629, 633–34 (Tex. 2012). Accordingly, the Court will analyze each claim concurrently.

Plaintiff's claims are evaluated under the *McDonnell Douglas* burden-shifting framework when, as here, the plaintiff relies on circumstantial evidence. *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011). *McDonnell Douglas* requires a three-step burden-shifting framework for evaluating discrimination claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden initially lies with the plaintiff to establish a prima facie case. *Id*. It then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [employment action]." *Id*.

Finally, a plaintiff is afforded an opportunity to show through adequate evidence that the defendant's stated reasons were a mere pretext for discrimination. *Id.* at 804.

Now to establish a prima facie case of discrimination, an employee must demonstrate that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014).

The Court assumes without deciding that Plaintiff has satisfied the first three elements. Nevertheless, Plaintiff's comparator showing is insufficient. Plaintiff has not identified another Division Manager-level employee in the relevant unit who both (1) failed to disclose a covered relationship under the policy, and (2) had a comparable disciplinary history but was treated more favorably.

Whether Plaintiff has stated a prima facie case of discrimination turns on whether the proffered comparators were "similarly situated" to her. Courts "require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). This requires showing that the comparators held the same job or responsibilities, shared a similar supervisor, and "have essentially comparable violation histories." *Id.* For instance, an employee discharged for violating two safety protocols cannot use as a comparator an employee who only violated a single safety protocol. *See Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 237 (5th Cir. 2006).

The evidence Plaintiff presents does not satisfy this burden. Plaintiff had previously violated the employee relationships policy. ECF No. 118-2 at 122–23. And the present violation leading to demotion occurred after this second failure to disclose a potential conflict of interest arising from a relationship. *Id.* at 245. Not, as Plaintiff contends, because she merely possessed a relationship with another employee. ECF No. 43 at

4

12. As comparators, Plaintiff makes various generalized statements suggesting that various employees outside her protected class were treated more favorably. *See* ECF No. 43 at 11–12. These vague and conclusory statements do not sufficiently identify a comparator who is "nearly identical." However, Plaintiff does identify two potential comparators: Reed Lathearon, "a Black male manager," and LaShonda Green, "a Black woman." *Id.* at 12. Neither supports a race-based discrimination claim.

From the evidence, it is unclear whether either comparator even possesses a materially similar job. Nevertheless, other evidence leads to the conclusion that no proffered comparator is "similarly situated." Reed Lathearon, for example, is alleged to have been given the opportunity to choose his discipline after receiving a serious complaint. *Id.* at 9. However, Plaintiff points to no competent evidence alleging the purpose of the complaint.

No other comparator has a similar violation history or even a similar violation of the employee relationship policy. While a plaintiff need not provide a comparator that is "strictly identical," violations still must be such that a reasonable inference of discrimination can be drawn. *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 998–99 (5th Cir. 2022). Here, Plaintiff merely alleges that various employees worked in similar departments with their spouses but were not demoted. *Id.* at 18. However, Plaintiff does not point to any evidence suggesting that any of these employees have violated the same policy in the past. The UPS policy does not prohibit merely having a relationship with other employees. ECF No. 118-2 at 118–21. Instead, it requires employees to *report* these relationships. *Id.* Thus, without providing evidence that any employee failed to report these relationships, the comparators cannot be said to be "nearly identical." So there is no genuine dispute of material fact regarding whether similarly situated employees were treated more favorably than Plaintiff.

## C. Racial Discrimination in Contractual Relationship

Plaintiff attempts to plead a separate cause of action for "racial discrimination in a contractual relationship." *See* ECF No. 43 at 19. The Court notes that this is in effect what a § 1981 racial discrimination

5

claim is. 42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of contracts. Thus, a claim styled such as this is simply a § 1981 race discrimination claim stated in different terms. It is duplicative of Plaintiff's race discrimination claim. And for the reasons stated previously, it fails.

**D. Hostile Work Environment**

To prevail on a hostile work environment claim, a plaintiff must show: "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to prompt remedial action." *Collier v. Dall. Cnty. Hosp. Dist.*, 827 F. App'x 373, 376 (5th Cir. 2020) (per curiam) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)).

The fourth element requires that "[t]he harassment [] be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 377. Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005). Lastly, the alleged conduct must be "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accts.*, 168 F.3d 871, 874 (5th Cir. 1999).

Plaintiff alleges numerous actions to meet this standard. She alleges that she was subjected to excessive micromanagement and scrutiny, undermining of her managerial decisions, criticism during conference calls, and "verbal abuse," including an instance in which other employees overheard McClain discussing her nameplate. ECF No. 43 at 15–16. Plaintiff alleges that each of these actions was based on race, solely on the fact that other black and white men did not experience the

same level of workplace conduct. *Id.* at 16. As the Court explained previously, these comparators are insufficient. Furthermore, "subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment." *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023). "[F]acially neutral actions," such as are alleged here, are not sufficient because the plaintiff has presented no evidence beyond speculation that these actions were motivated by a discriminatory motive. *Id.*

### E. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

Plaintiff's internal complaints were not protected activity because they complained about unfairness/personal animus and used generic terms without identifying unlawful race/sex discrimination. The Fifth Circuit has repeatedly held that generalized complaints, without specifically explaining how the discrimination relates to race, sex, or some other protected activity, are insufficient to engage in a protected activity. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) ("It contains no reference to conduct that could even plausibly be considered discriminatory in nature."); *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011).

A protected activity is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceedings, or hearing under Title VII." *Brown v. UPS*, 406 F. App'x 837, 840 (5th Cir. 2010). Title VII "does not set forth 'a general civility code for the American workplace.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Here, Plaintiff submitted various internal complaints in which she alleged workplace grievances and concluded by stating, "This is

workplace discrimination." ECF No. 118-3 at 246. In a later complaint, she again made a general statement: "He is creating a hostile work environment." *Id.* at 248.

Plaintiff's internal complaints amount to nothing more than general workplace grievances, and at no point was any language used that would put UPS on notice that she was complaining about some form of unlawful discrimination. *See Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (holding that merely stating that a "hostile work environment" exists is insufficient to constitute a protected activity where the employee does not suggest the environment was due to a protected characteristic). Because the internal complaints did not allude to a protected characteristic, they do not constitute a protected activity for purposes of retaliation.

Next, she alleges that UPS engaged in various adverse employment actions following her submission of two EEOC complaints on July 1, 2024, and August 5, 2024. ECF No. 43 at 13–14. None of the alleged adverse employment actions occurring prior to these dates may constitute retaliation, including the demotion. The only alleged adverse employment actions occurring after the EEOC complaints were a statement by McCain where he allegedly stated: "I don't know why the fuck she got her name on the door, she is not staying over here," and perhaps the reassignment to a separate facility. ECF No. 43 at 9; ECF No. 117 at 11.

To rise to the level of an adverse employment action, the conduct must be materially adverse and likely to "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). This is because Title VII is not a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Workplace criticisms and reprimands do not rise to the level of adverse employment actions. *King v. Louisiana*, 294 F. App'x 77, 84–85 (5th Cir. 2008). A single negative statement directed at the Plaintiff, even if taken in the light most favorable to the Plaintiff, does not constitute an adverse employment action. Not to mention that the statement, overheard by

8

two co-employees, constitutes hearsay within hearsay, not covered under an exception.

Regarding Plaintiff's reassignment, this does not constitute a materially adverse employment action. *See Awe v. Harris Health Sys.*, 163 F.4th 969, 973 (5th Cir. 2026) (restating that the standard is *material* adversity). Transfers that maintain equal pay, benefits, and job responsibilities do not constitute adverse action. *See Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 804 (5th Cir. 2018). Plaintiff provides no evidence to suggest that the transfer amounted to an adverse employment action. Plaintiff merely states that the transfers were to "inconvenient and burdensome locations, thereby disrupting Plaintiff's professional stability, imposing hardship on Plaintiff's family responsibilities, and exacerbating Plaintiff's workplace stress." ECF No. 43 at 14. But provides no evidence that suggests these transfers to nearby locations were materially adverse.

Alternatively, Plaintiff's claim fails under *McDonnell Douglas*. UPS had legitimate, nondiscriminatory reasons for the facility reassignments. Plaintiff's position was effectively an "extra" manager, to be used to fill operational needs within the area. ECF No. 118-2 at 240–41. Each reassignment was to fill an operational need. ECF Nos. 118-2 at 241; 118-5 at 2. Nor is this targeted at Plaintiff, as other employees similarly faced frequent reassignment, including one who was reassigned at least ten times. ECF Nos. 118-2 at 19; 118-5 at 3.

Thus, the burden shifts to the plaintiff to show that the employer's reasons were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Plaintiff must show that the adverse employment action— here, reassignment—would not have occurred but for the employer's retaliatory motive. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). This may be shown by providing evidence that the stated reasons are false or unworthy of credence. *Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356, 363 (5th Cir. 2013). Plaintiff has failed to provide any evidence suggesting that the employer's stated reasons are false. Instead, Plaintiff points to various disputes underlying the marriage. *See* ECF No. 117 at 18–19. Nothing that would suggest that Plaintiff's reassignment was caused by her various complaints.

Consequently, Defendant is entitled to summary judgment as a matter of law.

**F. Breach of Contract**

Plaintiff's response is organized entirely around evidentiary objections and Title VII discrimination, retaliation, and hostile work environment arguments. Plaintiff has wholly failed to defend against the motion for summary judgment challenges to the Breach of Contract claim. Plaintiff has, therefore, abandoned this claim. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (noting that "an issue raised in the complaint but ignored at summary judgment may be deemed waived" (citation omitted)).

## CONCLUSION

For the above reasons, the Court concludes that Defendant's Summary Judgment should be and hereby is **GRANTED**. All claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **6th day of March 2026.**

*[Signature: Mark T. Pittman]*

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE